IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FRACTUS, S.A.,

          Plaintiff,

    v.

VERIZON COMMUNICATIONS INC. and
CELLCO PARTNERSHIP D/B/A VERIZON
WIRELESS,

          Defendants.

**Civil Action No. _____**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Fractus, S.A. ("Fractus" or "Plaintiff") submits this complaint for patent

infringement against Defendants Verizon Communications Inc. and Cellco Partnership d/b/a

Verizon Wireless (collectively, "Verizon" or "Defendants").  Plaintiff alleges the following:

## PARTIES

1.      Fractus is a corporation organized and existing under the laws of Spain, with its

principal place of business in Sant Cugat del Valles, Barcelona, Spain.  Fractus is a world-

renowned innovator in the field of antenna technology, and the inventor of high-performance

antennas that allow cellular companies like Verizon and smartphone makers like Samsung to

deliver high-speed internet access to their customers.  Fractus is asserting U.S. Patent Nos.

6,937,191 (the "'191 patent"), 7,250,918 (the "'918 patent"), 7,557,768 (the "'768 patent"),

7,932,870 (the "'870 patent"), 8,228,256 (the "'256 patent"), 8,896,493 (the "'493 patent"),

9,905,940 (the "'940 patent"), 8,497,814 (the "'814 patent"), 8,754,824 (the "'824 patent"), and

9,450,305 (the "'305 patent") (collectively, the "Patents").  The individual inventors on those

Patents were Fractus's founders, scientists and electrical engineers, who have transferred all of their rights, title and interest in the Patents to Fractus.

2.      On information and belief, Defendant Verizon Communications Inc. is a Delaware corporation with its principal place of business in New York, New York.

3.      On information and belief, Defendant Cellco Partnership d/b/a Verizon Wireless is a Delaware general partnership with its principal place of business in Basking Ridge, New Jersey.

## JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 271, 281, 282(a), 283, 284, and 285.  This Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Defendants.  Defendants have regularly conducted and continue to conduct business in the State of Texas and in the Eastern District of Texas.  On information and belief, Defendants have committed acts of infringement in the United States, in Texas, and in this federal judicial district including by making, using, offering for sale, selling or importing products or services that infringe the Patents, or by inducing others to infringe the Patents.

6.      Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1400(b).  Upon information and belief, Defendants have committed infringing acts in this judicial district by making, using, offering for sale, selling, or importing products or services that infringe the Patents, or by inducing others to infringe the Patents.  On information and belief, Defendants maintain a "regular and established" place of business in this federal judicial district, including

by (a) maintaining or controlling retail stores in this federal judicial district, (b) maintaining and operating infringing base station antennas in this federal judicial district, including on cellular towers and other installation sites owned or leased by Defendants, and (c) maintaining and operating other places of business, including those where research and development and sales are conducted, where customer service is provided, or where repairs are made.

7.      Upon information and belief, Defendants have a regular and established physical presence in the District, including but not limited to, ownership of or control over property, inventory, or infrastructure.  For example, Verizon's website displays information for Verizon retail stores located at 2035 North Central Expressway, Suite 620, McKinney, Texas;  8988 South Broadway Avenue, Suite 110, Tyler, Texas; and 2330 Preston Road, Suite 500, Frisco, Texas, all of which lie within this federal judicial district.

8.      In other recent actions, Defendants have either admitted or not contested that this federal judicial district is a proper venue for patent infringement actions against them.  *See, e.g.*, Answer ¶ 6, *Traxcell Techs., LLC v. Verizon Commc'ns, Inc., et al.*, No. 2:17-cv-00721, (E.D. Tex. Jan. 22, 2018), ECF No. 8; *see generally Location Based Srvs., LLC v. Cellco P'ship d/b/a Verizon Wireless*, No. 2:17-cv-00573 (E.D. Tex.).  Defendant Cellco Partnership has also admitted or failed to contest that it has transacted business in this district.  *See* Answer ¶¶ 6, 16, *Cellular Commc'ns Equip. LLC v. Apple, Inc.*, No. 6:17-cv-00146 (E.D. Tex. June 29, 2017), ECF No. 44; Answer ¶ 8, *Plectrum LLC v. Verizon Commc'ns Inc.*, No. 4:17-cv-00126 (E.D. Tex. Apr. 19, 2017), ECF No. 21.

9.      Defendants derive benefits from their presence in this federal judicial district, including, but not limited to, sales revenue.  For example, Verizon receives revenue from its

corporate stores in this district, by selling network access, phones/products, and services and by receiving payment for its network access, phones/products, and services.

## FACTUAL ALLEGATIONS

### *Fractus Antennas Have Revolutionized the Cellular Telecommunications Industry*

10.     Cellular telephones communicate with the cellular network using radio waves. The earliest cellular systems used only a single frequency band.  Phones were designed to transmit and receive only on that particular frequency band, and cellular companies like Verizon built nationwide networks using antennas that connected with those phones on that frequency band.  (Cellular network antennas are sometimes referred to as "base station antennas" and are familiar sights on cell towers commonly seen along highways, or mounted high on buildings.)

11.     But with the exploding popularity of cell phones, and especially with the introduction of phones capable of data communications, it soon became clear that the single, narrow frequency bands would be insufficient to meet consumer demand.  Newer generations of cellular systems were developed that made use of multiple frequency bands, significantly increasing their capacity and allowing them to communicate at much higher speeds.  It is the use of multiple frequency bands—or "multiband" communications—that added the capacity that now allows users to send email, access the internet, stream movies and play online games on their smartphones.

12.     Faced with massive new demand from hundreds of millions of new, data-hungry customers, Verizon and other cellular companies (or "carriers") acquired rights to use new frequency bands.  Those rights came at great expense, with Verizon and its competitors paying tens of billions of dollars for access to new frequency bands.

13.     Building out their networks to use the new spectrum added tremendous additional cost for the carriers.  The cellular networks were originally built using antennas that were capable of transmission and reception in only one frequency band.  When another frequency band was added, Verizon and other carriers needed to purchase a second antenna for each cell tower or other installation site, driving up costs.  Such a purchase came with other associated costs, including: installing the antenna, buying or leasing additional space for the antenna, and maintaining and servicing the antenna.  With the adoption of newer cellular standards using a third or even a fourth frequency band, the need for additional antennas multiplied, and so did the associated expenses.

14.     Often, especially in critical locations like cities, deployment of so many antennas was simply impossible.  Installation sites were too crowded, or regulations restricted the number or size of antennas that could be installed.  In some locations, the weight or "wind load"—the force of wind on the structure—precluded addition of more antennas.  As a result, carriers could not take advantage of multiple frequencies in those locations, reducing capacity and performance greatly.

15.     Fractus envisioned a radically different solution to these problems.  Rather than using a separate antenna for each frequency band, Fractus invented an antenna that could be used in multiple frequency bands.  This multiband antenna meant that cellular companies like Verizon could cover multiple frequency bands using just one antenna, doing a job that previously required separate antennas for each frequency band.  The Fractus antennas occupied less space, meaning that additional rental or real estate costs were eliminated and that Verizon and other carriers were able to lower the cost of installation and maintenance.  In addition, the multiband

5

antennas could be deployed in locations that could not accommodate multiple antennas, allowing the carriers to improve cellular coverage.

16.     The Fractus inventions revolutionized the cellular telecommunications industry, and is the foundation for the designs used by virtually all modern cellular base station antennas, including those deployed by Verizon throughout the United States.

*The Origins of the Fractus Inventions*

17.     The roots of Fractus's inventions lie in academic research conducted in the 1990s by the company's founder and lead inventor, Dr. Carles Puente.  The research began while Dr. Puente was a graduate student at the University of Illinois, well known for being the birthplace of internet-based innovations such as Netscape, the first graphical browser for the internet.  His research continued after he became professor at the Polytechnic University of Catalonia in Spain, known locally as "Barcelona Tech," and one of Europe's leading technical universities.

18.     In the late 1990s, Dr. Puente and his team began experimentation on antennas that could operate at multiple frequency bands at the same time.  Their original concept focused on the use of repeating patterns known as fractals (the origin of the name "Fractus").  Building from that original concept, Dr. Puente's team focused on developing multiband antennas for both sides of the cellular telecommunications system—small antennas for use in phones, and base station antennas for use in the cellular network.

19.     Base station antennas are made up of multiple smaller antennas (sometimes referred to as "antenna elements") arranged in an array that work together to send and receive radio signals from multiple cellular phones in the base station's service area.  But as with individual antennas, the typical arrays in use at the time of Fractus's inventions were capable of operating in just a single frequency band.  The structural characteristics of a particular array,

including its size and the spacing of the antenna elements determined the frequency band on which it would operate.  If carriers like Verizon wanted to use more than one frequency band, it would need to install separate antennas specifically configured for each of the different band.

20.     Fractus's groundbreaking arrays grew out of the concept of using individual antenna elements that are each themselves capable of transmitting and receiving in multiple frequency bands, arranged in an interlaced pattern using spacing that optimizes the overall performance of the resulting antenna.  Compared to previous attempts to design "multiband" arrays, the Fractus antenna enabled the high quality performance that is essential for cellular networks, can be used for a wide variety of frequency bands, and—perhaps most importantly— does so within a small, compact design that does not require additional space on cell towers or installation sites.

21.     In 1999, Dr. Puente and his team founded Fractus as a private company to work on the commercial development of multiband antennas for the cellular telecommunications industry, and applied for patents on their groundbreaking innovation.  The United States Patent and Trademark Office (the "PTO") has awarded Fractus seven patents in that original patent family, titled "Interlaced Multiband Antenna Arrays," referred to herein as the '191, '918, '768, '870, '256, '493 and '940 patents, or together as the "Fractus Multiband Array Patents."

<u>Praise for the Fractus Inventions</u>

22.     The inventions were quickly recognized as game-changing.  Telefonica, the leading Spanish carrier, snapped up Fractus's first multiband base station antennas.  Shortly thereafter, global electronics giant Siemens approached Fractus and proposed using Fractus's innovation as the core of all of Siemens's multiband base station antennas.  In 2003, Fractus and Siemens entered into a commercial partnership and began industrial production in Europe.  Ideas

developed by the Fractus team during its partnership with Siemens further enhanced the capability of the multiband designs, resulting in the invention of a compact base station antenna capable of operation in three (or more) frequency bands and incorporating additional features that further enhanced performance.  Those innovations are reflected in three additional patents awarded by the PTO: the '814, '824, and '305 patents, titled "Slim Triple Band Antenna Array for Cellular Base Stations," and referred to herein as the "Fractus Slim Triple Band Patents."

23.     Dr. Puente and the other Fractus inventors have received widespread acclaim for their innovations.  In 2014, they were named finalists for the European Inventor Award by the European Patent Office—the preeminent award for inventions in Europe.  Fractus was also designated as a Technology Pioneer by the World Economic Forum in 2005, won the Elektra European Electronics Industry R&D Award in 2007, and was named a Pioneer in antenna technology development by Spanish Royal Academy of Engineering in 2015.

24.     Fractus's cellular phone antenna designs have been licensed by all of the world's largest smartphone manufacturers, including Samsung, LG, Blackberry and Motorola and others. Together, phone manufacturers have paid Fractus more than $100 million in licensing fees for the right to use its smartphone antenna designs.

## THE INFRINGING ANTENNAS

25.     While Verizon has saved hundreds of millions of dollars by deploying base station antennas across the United States using Fractus's patented technology, it has never paid any royalties for the right to do so.  Fractus is entitled to compensation for Verizon's use of its inventions.  It brings this lawsuit to recover that fair share.

26.     The success of Verizon is built on the quality of its nationwide network, and the ability to provide high-speed connections to hundreds of millions of users across the entire country, proudly asking customers: "Can you hear me now?"

27.     To deliver that capacity, Verizon and the other major U.S. carriers have invested billions of dollars in successive generations of cellular standards that utilize increasing numbers of frequency bands.  They source the highest-performance antennas from manufacturers like Amphenol, Kathrein, Commscope, and RFS that are capable of multiband communications. Virtually every one of those antennas infringes Fractus's patent rights.

28.     Representative examples of these antennas (the "Infringing Antennas"), and a short summary of some of the ways they infringe are set forth below.    The information provided in this complaint regarding these representative examples should not be construed as limiting the scope of this complaint.

29.     On information and belief, Verizon uses the Amphenol 6890300, the Kathrein 80010691V01, or antennas with a materially equivalent structure, to provide cellular telecommunication services to their customers.  The Amphenol 6890300 antenna utilizes an interlaced multiband antenna array operating on a plurality of frequency bands using features claimed and disclosed in the Patents, specifically in the Fractus Multiband Array Patents:



| ELECTRICAL CHARACTERISTICS | R1 | | | |
|---|---|---|---|---|
| Frequency Bands | 698-960 MHz | | | |
| | 698-806 MHz | 790-862 MHz | 824-894 MHz | 880-960 MHz |

| ELECTRICAL CHARACTERISTICS | Y1 | | | | |
|---|---|---|---|---|---|
| Frequency Bands | 1695-2690 MHz | | | | |
| | 1695-1880 MHz | 1850-1990 MHz | 1920-2180 MHz | 2300-2500 MHz | 2490-2690 MHz |

| ELECTRICAL CHARACTERISTICS | Y2 | | | | |
|---|---|---|---|---|---|
| Frequency Bands | 1695-2690 MHz | | | | |
| | 1695-1880 MHz | 1850-1990 MHz | 1920-2180 MHz | 2300-2500 MHz | 2490-2690 MHz |

30.    This exemplary antenna has antenna elements in an interlaced configuration

determined by the juxtaposition of other antenna elements, as described in the Fractus Multiband

Array Patents.  In accordance with other features claimed in the Fractus Multiband Array Patents, the antenna elements are arranged with respect to a longitudinal axis of the array.  In addition, the spacing between antenna elements and the ratio between the frequencies match the particular spacing and frequency ratios claimed in the Patents.

31.     The Amphenol 6890300 antenna operates on at least three frequency bands in a configuration disclosed and claimed by the Fractus Slim Triple Band Patents.

32.     In accordance with other features claimed in the Fractus Slim Triple Band Patents, the antenna (or radiating) elements are arranged with respect to a vertical direction of a ground plane, and the antenna contains phase shifters that provide variable electrical downtilt.  In addition, the size of the antenna elements and certain physical features of portions of antenna elements match the particular sizing and features claimed in the Fractus Slim Triple Band Patents.

33.     Similarly, the Kathrein 80010691V01 antenna utilizes an interlaced multiband antenna array operating on a plurality of frequency bands using features claimed and disclosed in the Patents, specifically in the Fractus Multiband Array Patents:



| Lowband | | R1, connector 1–2 | | | |
|---|---|---|---|---|---|
| | | 698–960 | | | |
| Frequency Range | MHz | 698 – 806 | 790 – 862 | 824 – 894 | 880 – 960 |

| Lower highband | | Y1, connector 3–4 | | | | |
|---|---|---|---|---|---|---|
| | | 1710–2690 | | | | |
| Frequency Range | MHz | 1710 – 1880 | 1850 – 1990 | 1920 – 2180 | 2300 – 2400 | 2490 – 2690 |

| Upper highband | | Y2, connector 5–6 | | | | |
|---|---|---|---|---|---|---|
| | | 1710–2690 | | | | |
| Frequency Range | MHz | 1710 – 1880 | 1850 – 1990 | 1920 – 2180 | 2300 – 2400 | 2490 – 2690 |

34.     This exemplary antenna has antenna elements in an interlaced configuration determined by the juxtaposition of other antenna elements as described in the Fractus Multiband Array Patents.  In accordance with other features claimed in the Fractus Multiband Array Patents, the antenna elements are arranged with respect to a longitudinal axis of the array.  In addition, the spacing between the antenna elements and the ratio between the frequencies match the particular spacing and frequency ratios claimed in the Patents.

35.     The Kathrein 80010691V01 antenna operates on at least three frequency bands in a configuration disclosed and claimed by the Fractus Slim Triple Band Patents.

36.     In accordance with other features claimed in the Fractus Slim Triple Band Patents, the antenna (or radiating) elements are arranged with respect to a vertical direction of a ground plane, and the antenna contains phase shifters that provide variable electrical downtilt.  In addition, the size of the antenna elements and certain physical features of portions of antenna elements match the particular sizing and features claimed in the Fractus Slim Triple Band Patents.

## COUNT ONE: INFRINGEMENT OF U.S. PATENT 6,937,191

37.     The '191 patent, entitled "Interlaced Multiband Antenna Arrays," was duly and legally issued by the PTO on August 30, 2005, after a full and fair examination.  Fractus owns the '191 patent by assignment.  The named inventor on the '191 patent is Carles Puente Baliarda.  A true and correct copy of the '191 patent is attached hereto as Exhibit A.

38.     The '191 patent is valid and enforceable.  Defendants do not have a license to practice any of the inventions claimed in the '191 patent.

39.     Defendants directly infringe at least claim 1 of the '191 patent by making, using, selling, offering to sell, and/or importing products or services that infringe the Patents—including the Infringing Antennas—which meet every limitation of at least claim 1 of the '191 patent.

40.     To the extent Defendants do not directly own and operate the Infringing Antennas, the Infringing Antennas are nevertheless under the direct control of Defendants and are used by Defendants in providing cellular services.

41.     In addition, Defendants have actively induced and continue to actively induce others to directly infringe the '191 patent by making, using, selling, offering to sell, and/or importing the Infringing Antennas.  Moreover, Defendants have known of and/or should have known of the '191 patent, by at least  the date of the patent's issuance, such that Defendants knew and should have known that they were and would be inducing infringement.  To the extent Defendants were not previously aware of the '191 patent, they are aware of it as of the filing of this complaint.

42.     In addition, on information and belief from at least as early as the filing of this complaint, Defendants have infringed or induced others to make, use, sell, offer to sell, and/or import the Infringing Antennas with knowledge of and/or willful blindness to the fact that such use infringes the '191 patent, have disregarded an objectively high likelihood of infringement of the '191 patent, and have acted, and continue to act, willfully, wantonly, and in deliberate disregard of Fractus's rights.

43.     As the direct and proximate result of Defendants' conduct, Fractus has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Fractus's remedy at law is inadequate, Fractus seeks, in addition to damages, injunctive relief.  Fractus's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

44.     Fractus is entitled to injunctive relief and damages of no less than a reasonable royalty in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

45.     Defendants' conduct, including their infringement of the '191 patent, is exceptional and entitles Fractus to attorneys' fees and costs under 35 U.S.C. § 285.

46.     From at least as early as the filing of this complaint, Defendants have been on notice of their infringement of the '191 patent, and their infringement has been and continues to be willful and egregious, entitling Fractus to enhanced damages in accordance with 35 U.S.C. § 284.

**COUNT TWO: INFRINGEMENT OF U.S. PATENT 7,250,918**

47.     The '918 patent, entitled "Interlaced Multiband Antenna Arrays," was duly and legally issued by the PTO on July 31, 2007, after a full and fair examination.  Fractus owns the '918 patent by assignment.  The named inventor on the '918 patent is Carles Puente Baliarda.  A true and correct copy of the '918 patent is attached hereto as Exhibit B.

48.     The '918 patent is valid and enforceable.  Defendants do not have a license to practice any of the inventions claimed in the '918 patent.

49.     Defendants directly infringe at least claim 1 of the '918 patent by making, using, selling, offering to sell, and/or importing products or services that infringe the Patents—including the Infringing Antennas—which meet every limitation of at least claim 1 of the '918 patent.

50.     To the extent Defendants do not directly own and operate the Infringing Antennas, the Infringing Antennas are nevertheless under the direct control of Defendants and are used by Defendants in providing cellular services.

51.     In addition, Defendants have actively induced and continue to actively induce others to directly infringe the '918 patent by making, using, selling, offering to sell, and/or importing the Infringing Antennas.  Moreover, Defendants have known of and/or should have known of the '918 patent, by at least  the date of the patent's issuance, such that Defendants knew and should have known that they were and would be inducing infringement.  To the extent

Defendants were not previously aware of the '918 patent, they are aware of it as of the filing of this complaint.

52.     In addition, on information and belief from at least as early as the filing of this complaint, Defendants have infringed or induced others to make, use, sell, offer to sell, and/or import the Infringing Antennas with knowledge of and/or willful blindness to the fact that such use infringes the '918 patent, have disregarded an objectively high likelihood of infringement of the '918 patent, and have acted, and continue to act, willfully, wantonly, and in deliberate disregard of Fractus's rights.

53.     As the direct and proximate result of Defendants' conduct, Fractus has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Fractus's remedy at law is inadequate, Fractus seeks, in addition to damages, injunctive relief.  Fractus's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

54.     Fractus is entitled to injunctive relief and damages of no less than a reasonable royalty in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

55.     Defendants' conduct, including their infringement of the '918 patent, is exceptional and entitles Fractus to attorneys' fees and costs under 35 U.S.C. § 285.

56.     From at least as early as the filing of this complaint, Defendants have been on notice of their infringement of the '918 patent, and their infringement has been and continues to be willful and egregious, entitling Fractus to enhanced damages in accordance with 35 U.S.C. § 284.

## COUNT THREE: INFRINGEMENT OF U.S. PATENT 7,557,768

57.     The '768 patent, entitled "Interlaced Multiband Antenna Arrays," was duly and legally issued by the PTO on July 7, 2009, after a full and fair examination.  Fractus owns the '768 patent by assignment.  The named inventors on the '768 patent are Carles Puente Baliarda, Jordi Romeu, and Sebastian Blanch.  A true and correct copy of the '768 patent is attached hereto as Exhibit C.

58.     The '768 patent is valid and enforceable.  Defendants do not have a license to practice any of the inventions claimed in the '768 patent.

59.     Defendants directly infringe at least claim 1 of the '768 patent by making, using, selling, offering to sell, and/or importing products or services that infringe the Patents— including the Infringing Antennas—which meet every limitation of at least claim 1 of the '768 patent.

60.     To the extent Defendants do not directly own and operate the Infringing Antennas, the Infringing Antennas are nevertheless under the direct control of Defendants and are used by Defendants in providing cellular services.

61.     In addition, Defendants have actively induced and continue to actively induce others to directly infringe the '768 patent by making, using, selling, offering to sell, and/or importing the Infringing Antennas.  Moreover, Defendants have known of and/or should have known of the '768 patent, by at least  the date of the patent's issuance, such that Defendants knew and should have known that they were and would be inducing infringement.  To the extent Defendants were not previously aware of the '768 patent, they are aware of it as of the filing of this complaint.

62.     In addition, on information and belief from at least as early as the filing of this complaint, Defendants have infringed or induced others to make, use, sell, offer to sell, and/or

import the Infringing Antennas with knowledge of and/or willful blindness to the fact that such

use infringes the '768 patent, have disregarded an objectively high likelihood of infringement of

the '768 patent, and have acted, and continue to act, willfully, wantonly, and in deliberate

disregard of Fractus's rights.

63.     As the direct and proximate result of Defendants' conduct, Fractus has suffered

and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm,

irreparable injury, and significant damages, in an amount to be proven at trial.  Because Fractus's

remedy at law is inadequate, Fractus seeks, in addition to damages, injunctive relief.  Fractus's

business operates in a competitive market and will continue suffering irreparable harm absent

injunctive relief.

64.     Fractus is entitled to injunctive relief and damages of no less than a reasonable

royalty in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

65.     Defendants' conduct, including their infringement of the '768 patent, is

exceptional and entitles Fractus to attorneys' fees and costs under 35 U.S.C. § 285.

66.     From at least as early as the filing of this complaint, Defendants have been on

notice of their infringement of the '768 patent, and their infringement has been and continues to

be willful and egregious, entitling Fractus to enhanced damages in accordance with 35 U.S.C. §

284.

**COUNT FOUR: INFRINGEMENT OF U.S. PATENT 7,932,870**

67.     The '870 patent, entitled "Interlaced Multiband Antenna Arrays," was duly and

legally issued by the PTO on April 26, 2011, after a full and fair examination.  Fractus owns the

'870 patent by assignment.  The named inventors on the '870 patent are Carles Puente Baliarda,

Jordi Romeu, and Sebastian Blanch.  A true and correct copy of the '870 patent is attached hereto as Exhibit D.

68.     The '870 patent is valid and enforceable.  Defendants do not have a license to practice any of the inventions claimed in the '870 patent.

69.     Defendants directly infringe at least claim 1 of the '870 patent by making, using, selling, offering to sell, and/or importing products or services that infringe the Patents— including the Infringing Antennas—which meet every limitation of at least claim 1 of the '870 patent.

70.     To the extent Defendants do not directly own and operate the Infringing Antennas, the Infringing Antennas are nevertheless under the direct control of Defendants and are used by Defendants in providing cellular services.

71.     In addition, Defendants have actively induced and continue to actively induce others to directly infringe the '870 patent by making, using, selling, offering to sell, and/or importing the Infringing Antennas.  Moreover, Defendants have known of and/or should have known of the '870 patent, by at least  the date of the patent's issuance, such that Defendants knew and should have known that they were and would be inducing infringement.  To the extent Defendants were not previously aware of the '870 patent, they are aware of it as of the filing of this complaint.

72.     In addition, on information and belief from at least as early as the filing of this complaint, Defendants have infringed or induced others to make, use, sell, offer to sell, and/or import the Infringing Antennas with knowledge of and/or willful blindness to the fact that such use infringes the '870 patent, have disregarded an objectively high likelihood of infringement of

the '870 patent, and have acted, and continue to act, willfully, wantonly, and in deliberate disregard of Fractus's rights.

73.     As the direct and proximate result of Defendants' conduct, Fractus has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Fractus's remedy at law is inadequate, Fractus seeks, in addition to damages, injunctive relief.  Fractus's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

74.     Fractus is entitled to injunctive relief and damages of no less than a reasonable royalty in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

75.     Defendants' conduct, including their infringement of the '870 patent, is exceptional and entitles Fractus to attorneys' fees and costs under 35 U.S.C. § 285.

76.     From at least as early as the filing of this complaint, Defendants have been on notice of their infringement of the '870 patent, and their infringement has been and continues to be willful and egregious, entitling Fractus to enhanced damages in accordance with 35 U.S.C. § 284.

## COUNT FIVE: INFRINGEMENT OF U.S. PATENT 8,228,256

77.     The '256 patent, entitled "Interlaced Multiband Antenna Arrays," was duly and legally issued by the PTO on July 24, 2012, after a full and fair examination.  Fractus owns the '256 patent by assignment.  The named inventors on the '256 patent are Carles Puente Baliarda, Jordi Romeu, and Sebastian Blanch.  A true and correct copy of the '256 patent is attached hereto as Exhibit E.

78.    The '256 patent is valid and enforceable.  Defendants do not have a license to practice any of the inventions claimed in the '256 patent.

79.    Defendants directly infringe at least claim 1 of the '256 patent by making, using, selling, offering to sell, and/or importing products or services that infringe the Patents— including the Infringing Antennas—which meet every limitation of at least claim 1 of the '256 patent.

80.    To the extent Defendants do not directly own and operate the Infringing Antennas, the Infringing Antennas are nevertheless under the direct control of Defendants and are used by Defendants in providing cellular services.

81.    In addition, Defendants have actively induced and continue to actively induce others to directly infringe the '256 patent by making, using, selling, offering to sell, and/or importing the Infringing Antennas.  Moreover, Defendants have known of and/or should have known of the '256 patent, by at least  the date of the patent's issuance, such that Defendants knew and should have known that they were and would be inducing infringement.  To the extent Defendants were not previously aware of the '256 patent, they are aware of it as of the filing of this complaint.

82.    In addition, on information and belief from at least as early as the filing of this complaint, Defendants have infringed or induced others to make, use, sell, offer to sell, and/or import the Infringing Antennas with knowledge of and/or willful blindness to the fact that such use infringes the '256 patent, have disregarded an objectively high likelihood of infringement of the '256 patent, and have acted, and continue to act, willfully, wantonly, and in deliberate disregard of Fractus's rights.

83.     As the direct and proximate result of Defendants' conduct, Fractus has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Fractus's remedy at law is inadequate, Fractus seeks, in addition to damages, injunctive relief.  Fractus's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

84.     Fractus is entitled to injunctive relief and damages of no less than a reasonable royalty in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

85.     Defendants' conduct, including their infringement of the '256 patent, is exceptional and entitles Fractus to attorneys' fees and costs under 35 U.S.C. § 285.

86.     From at least as early as the filing of this complaint, Defendants have been on notice of their infringement of the '256 patent, and their infringement has been and continues to be willful and egregious, entitling Fractus to enhanced damages in accordance with 35 U.S.C. § 284.

## COUNT SIX: INFRINGEMENT OF U.S. PATENT 8,896,493

87.     The '493 patent, entitled "Interlaced Multiband Antenna Arrays," was duly and legally issued by the PTO on November 25, 2014, after a full and fair examination.  Fractus owns the '493 patent by assignment.  The named inventors on the '493 patent are Carles Puente Baliarda, Jordi Romeu, and Sebastian Blanch.  A true and correct copy of the '493 patent is attached hereto as Exhibit F.

88.     The '493 patent is valid and enforceable.  Defendants do not have a license to practice any of the inventions claimed in the '493 patent.

22

89.     Defendants directly infringe at least claim 11 of the '493 patent by making, using, selling, offering to sell, and/or importing products or services that infringe the Patents—including the Infringing Antennas—which meet every limitation of at least claim 11 of the '493 patent.

90.     To the extent Defendants do not directly own and operate the Infringing Antennas, the Infringing Antennas are nevertheless under the direct control of Defendants and are used by Defendants in providing cellular services.

91.     In addition, Defendants have actively induced and continue to actively induce others to directly infringe the '493 patent by making, using, selling, offering to sell, and/or importing the Infringing Antennas.  Moreover, Defendants have known of and/or should have known of the '493 patent, by at least  the date of the patent's issuance, such that Defendants knew and should have known that they were and would be inducing infringement.  To the extent Defendants were not previously aware of the '493 patent, they are aware of it as of the filing of this complaint.

92.     In addition, on information and belief from at least as early as the filing of this complaint, Defendants have infringed or induced others to make, use, sell, offer to sell, and/or import the Infringing Antennas with knowledge of and/or willful blindness to the fact that such use infringes the '493 patent, have disregarded an objectively high likelihood of infringement of the '493 patent, and have acted, and continue to act, willfully, wantonly, and in deliberate disregard of Fractus's rights.

93.     As the direct and proximate result of Defendants' conduct, Fractus has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Fractus's

remedy at law is inadequate, Fractus seeks, in addition to damages, injunctive relief.  Fractus's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

94.     Fractus is entitled to injunctive relief and damages of no less than a reasonable royalty in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

95.     Defendants' conduct, including their infringement of the '493 patent, is exceptional and entitles Fractus to attorneys' fees and costs under 35 U.S.C. § 285.

96.     From at least as early as the filing of this complaint, Defendants have been on notice of their infringement of the '493 patent, and their infringement has been and continues to be willful and egregious, entitling Fractus to enhanced damages in accordance with 35 U.S.C. § 284.

<u>**COUNT SEVEN: INFRINGEMENT OF U.S. PATENT 9,905,940**</u>

97.     The '940 patent, entitled "Interlaced Multiband Antenna Arrays," was duly and legally issued by the PTO on February 27, 2018, after a full and fair examination.  Fractus owns the '940 patent by assignment.  The named inventors on the '940 patent are Carles Puente Baliarda, Jordi Romeu, and Sebastian Blanch.  A true and correct copy of the '940 patent is attached hereto as Exhibit G.

98.     The '940 patent is valid and enforceable.  Defendants do not have a license to practice any of the inventions claimed in the '940 patent.

99.     Defendants directly infringe at least claim 1 of the '940 patent by making, using, selling, offering to sell, and/or importing products or services that infringe the Patents—including the Infringing Antennas—which meet every limitation of at least claim 1 of the '940 patent.

100.    To the extent Defendants do not directly own and operate the Infringing Antennas, the Infringing Antennas are nevertheless under the direct control of Defendants and are used by Defendants in providing cellular services.

101.    In addition, Defendants have actively induced and continue to actively induce others to directly infringe the '940 patent by making, using, selling, offering to sell, and/or importing the Infringing Antennas.  Moreover, Defendants have known of and/or should have known of the '940 patent, by at least  the date of the patent's issuance, such that Defendants knew and should have known that they were and would be inducing infringement.  To the extent Defendants were not previously aware of the '940 patent, they are aware of it as of the filing of this complaint.

102.    In addition, on information and belief from at least as early as the filing of this complaint, Defendants have infringed or induced others to make, use, sell, offer to sell, and/or import the Infringing Antennas with knowledge of and/or willful blindness to the fact that such use infringes the '940 patent, have disregarded an objectively high likelihood of infringement of the '940 patent, and have acted, and continue to act, willfully, wantonly, and in deliberate disregard of Fractus's rights.

103.    As the direct and proximate result of Defendants' conduct, Fractus has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Fractus's remedy at law is inadequate, Fractus seeks, in addition to damages, injunctive relief.  Fractus's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

104.   Fractus is entitled to injunctive relief and damages of no less than a reasonable royalty in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

105.   Defendants' conduct, including their infringement of the '940 patent, is exceptional and entitles Fractus to attorneys' fees and costs under 35 U.S.C. § 285.

106.   From at least as early as the filing of this complaint, Defendants have been on notice of their infringement of the '940 patent, and their infringement has been and continues to be willful and egregious, entitling Fractus to enhanced damages in accordance with 35 U.S.C. § 284.

## COUNT EIGHT: INFRINGEMENT OF U.S. PATENT 8,497,814

107.   The '814 patent, entitled "Slim Triple Band Antenna Array for Cellular Base Stations," was duly and legally issued by the PTO on July 30, 2013, after a full and fair examination.  Fractus owns the '814 patent by assignment.  The named inventors on the '814 patent are Carles Puente Baliarda, Carmen Borja, Anthony Teillet, Dillon Kirchhoffer, and Jaume Anguera.  A true and correct copy of the '814 patent is attached hereto as Exhibit H.

108.   The '814 patent is valid and enforceable.  Defendants do not have a license to practice any of the inventions claimed in the '814 patent.

109.   Defendants directly infringe at least claim 1 of the '814 patent by making, using, selling, offering to sell, and/or importing products or services that infringe the Patents—including the Infringing Antennas—which meet every limitation of at least claim 1 of the '814 patent.

110.   To the extent Defendants do not directly own and operate the Infringing Antennas, the Infringing Antennas are nevertheless under the direct control of Defendants and are used by Defendants in providing cellular services.

111.    In addition, Defendants have actively induced and continue to actively induce others to directly infringe the '814 patent by making, using, selling, offering to sell, and/or importing the Infringing Antennas.  Moreover, Defendants have known of and/or should have known of the '814 patent, by at least  the date of the patent's issuance, such that Defendants knew and should have known that they were and would be inducing infringement.  To the extent Defendants were not previously aware of the '814 patent, they are aware of it as of the filing of this complaint.

112.    In addition, on information and belief from at least as early as the filing of this complaint, Defendants have infringed or induced others to make, use, sell, offer to sell, and/or import the Infringing Antennas with knowledge of and/or willful blindness to the fact that such use infringes the '814 patent, have disregarded an objectively high likelihood of infringement of the '814 patent, and have acted, and continue to act, willfully, wantonly, and in deliberate disregard of Fractus's rights.

113.    As the direct and proximate result of Defendants' conduct, Fractus has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Fractus's remedy at law is inadequate, Fractus seeks, in addition to damages, injunctive relief.  Fractus's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

114.    Fractus is entitled to injunctive relief and damages of no less than a reasonable royalty in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

115.    Defendants' conduct, including their infringement of the '814 patent, is exceptional and entitles Fractus to attorneys' fees and costs under 35 U.S.C. § 285.

116.    From at least as early as the filing of this complaint, Defendants have been on notice of their infringement of the '814 patent, and their infringement has been and continues to be willful and egregious, entitling Fractus to enhanced damages in accordance with 35 U.S.C. § 284.

## COUNT NINE: INFRINGEMENT OF THE U.S. PATENT 8,754,824

117.    The '824 patent, entitled "Slim Triple Band Antenna Array for Cellular Base Stations," was duly and legally issued by the PTO on June 17, 2014, after a full and fair examination.  Fractus owns the '824 patent by assignment.  The named inventors on the '824 patent are Carles Puente Baliarda, Carmen Borja, Anthony Teillet, Dillon Kirchhoffer, and Jaume Anguera.  A true and correct copy of the '824 patent is attached hereto as Exhibit I.

118.    The '824 patent is valid and enforceable.  Defendants do not have a license to practice any of the inventions claimed in the '824 patent.

119.    Defendants directly infringe at least claim 1 of the '824 patent by making, using, selling, offering to sell, and/or importing products or services that infringe the Patents—including the Infringing Antennas—which meet every limitation of at least claim 1 of the '824 patent.

120.    To the extent Defendants do not directly own and operate the Infringing Antennas, the Infringing Antennas are nevertheless under the direct control of Defendants and are used by Defendants in providing cellular services.

121.    In addition, Defendants have actively induced and continue to actively induce others to directly infringe the '824 patent by making, using, selling, offering to sell, and/or importing the Infringing Antennas.  Moreover, Defendants have known of and/or should have known of the '824 patent, by at least  the date of the patent's issuance, such that Defendants

knew and should have known that they were and would be inducing infringement.  To the extent Defendants were not previously aware of the '824 patent, they are aware of it as of the filing of this complaint.

122.     In addition, on information and belief from at least as early as the filing of this complaint, Defendants have infringed or induced others to make, use, sell, offer to sell, and/or import the Infringing Antennas with knowledge of and/or willful blindness to the fact that such use infringes the '824 patent, have disregarded an objectively high likelihood of infringement of the '824 patent, and have acted, and continue to act, willfully, wantonly, and in deliberate disregard of Fractus's rights.

123.     As the direct and proximate result of Defendants' conduct, Fractus has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Fractus's remedy at law is inadequate, Fractus seeks, in addition to damages, injunctive relief.  Fractus's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

124.     Fractus is entitled to injunctive relief and damages of no less than a reasonable royalty in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

125.     Defendants' conduct, including their infringement of the '824 patent, is exceptional and entitles Fractus to attorneys' fees and costs under 35 U.S.C. § 285.

126.     From at least as early as the filing of this complaint, Defendants have been on notice of their infringement of the '824 patent, and their infringement has been and continues to be willful and egregious, entitling Fractus to enhanced damages in accordance with 35 U.S.C. § 284.

## COUNT TEN: INFRINGEMENT OF U.S. PATENT 9,450,305

127.   The '305 patent, entitled "Slim Triple Band Antenna Array for Cellular Base Stations," was duly and legally issued by the PTO on September 20, 2016, after a full and fair examination.  Fractus owns the '305 patent by assignment.  The named inventors on the '305 patent are Carles Puente Baliarda, Carmen Borja, Anthony Teillet, Dillon Kirchhoffer, and Jaume Anguera.  A true and correct copy of the '305 patent is attached hereto as Exhibit J.

128.   The '305 patent is valid and enforceable.  Defendants do not have a license to practice any of the inventions claimed in the '305 patent.

129.   Defendants directly infringe at least claim 1 of the '305 patent by making, using, selling, offering to sell, and/or importing products or services that infringe the Patents— including the Infringing Antennas—which meet every limitation of at least claim 1 of the '305 patent.

130.   To the extent Defendants do not directly own and operate the Infringing Antennas, the Infringing Antennas are nevertheless under the direct control of Defendants and are used by Defendants in providing cellular services.

131.   In addition, Defendants have actively induced and continue to actively induce others to directly infringe the '305 patent by making, using, selling, offering to sell, and/or importing the Infringing Antennas.  Moreover, Defendants have known of and/or should have known of the '305 patent, by at least  the date of the patent's issuance, such that Defendants knew and should have known that they were and would be inducing infringement.  To the extent Defendants were not previously aware of the '305 patent, they are aware of it as of the filing of this complaint.

132.    In addition, on information and belief from at least as early as the filing of this complaint, Defendants have infringed or induced others to make, use, sell, offer to sell, and/or import the Infringing Antennas with knowledge of and/or willful blindness to the fact that such use infringes the '305 patent, have disregarded an objectively high likelihood of infringement of the '305 patent, and have acted, and continue to act, willfully, wantonly, and in deliberate disregard of Fractus's rights.

133.    As the direct and proximate result of Defendants' conduct, Fractus has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Fractus's remedy at law is inadequate, Fractus seeks, in addition to damages, injunctive relief.  Fractus's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

134.    Fractus is entitled to injunctive relief and damages of no less than a reasonable royalty in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

135.    Defendants' conduct, including their infringement of the '305 patent, is exceptional and entitles Fractus to attorneys' fees and costs under 35 U.S.C. § 285.

136.    From at least as early as the filing of this complaint, Defendants have been on notice of their infringement of the '305 patent, and their infringement has been and continues to be willful and egregious, entitling Fractus to enhanced damages in accordance with 35 U.S.C. § 284.

## DEMAND FOR JURY TRIAL

Fractus hereby demands a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

31

WHEREFORE, Plaintiff respectfully prays for entry of judgment as follows:

a)  That Defendants have infringed and continue to infringe one or more claims of the
    Patents;

b)  That Plaintiff  recover all damages to which it is entitled under 35 U.S.C. § 284, but
    in no event less than a reasonable royalty;

c)  That Defendants be permanently enjoined from further infringement of the Patents;

d)  That Plaintiff, as the prevailing party, shall recover from Defendants all taxable costs
    of court;

e)  That Plaintiff shall recover from Defendants all pre- and post-judgment interest on the
    damages award, calculated at the highest interest rates allowed by law;

f)  That Defendants' conduct was willful and that Plaintiff should therefore recover
    treble damages, including attorneys' fees, expenses, and costs incurred in this action,
    and an increase in the damage award pursuant to 35 U.S.C. § 284;

g)  That this case is exceptional and that Plaintiff shall therefore recover its attorneys'
    fees and other recoverable expenses, under 35 U.S.C. § 285; and

h)  That Plaintiff shall recover from Defendants such other and further relief as the Court
    deems appropriate.


Dated: April 9, 2018                    Respectfully submitted,

                                        /s/ *Michael Ng*
                                        Michael Ng
                                        California State Bar No. 237915 (Lead
                                        Attorney)
                                        Daniel A. Zaheer
                                        California State Bar No. 237118
                                        Michael M. Rosen (admission pending)
                                        California State Bar No. 230964

michael.ng@kobrekim.com
daniel.zaheer@kobrekim.com
michael.rosen@kobrekim.com
**KOBRE & KIM LLP**
150 California Street, 19th Floor
San Francisco, CA 94111
Telephone: 415-582-4800
Facsimile: 415-582-4811

Hugham Chan (admission pending)
Washington DC Bar No. 1011058
**KOBRE & KIM LLP**
1919 M Street, NW
Washington, DC 20036
Telephone: 202-664-1956
Facsimile: 202-510-2993
E-mail:hugham.chan@kobrekim.com

S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux
Texas State Bar No. 05770585
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com
**CAPSHAW DERIEUX LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770

T. John Ward Jr.
Texas State Bar No. 00794818
jw@jwfirm.com
**WARD, SMITH & HILL, PLLC**
PO Box 1231
Longview, TX 75606
Telephone: 903-757-6400
Facsimile: 903-757-2323

*Attorneys for Plaintiff*
FRACTUS, S.A.